**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NATHANIEL SPRIGGS, : Civil No. 1:22-CV-01474
         :
  Plaintiff,   :
         :
  v.     :
         :
CITY OF HARRISBURG, *et al.*, :
         :
  Defendants.  : Judge Jennifer P. Wilson

<u>**MEMORANDUM**</u>

This case involves allegations of First Amendment retaliation brought

pursuant to 42 U.S.C. § 1983, a violation of the Pennsylvania Whistleblower Law

("PWL"), wrongful termination under Pennsylvania law, and racial discrimination

under 42 U.S.C. § 1981.  (Doc. 20.)  Plaintiff Nathaniel Spriggs ("Spriggs") asserts

that he was employed by Defendant City of Harrisburg ("the City") from 1996

through approximately August 2017, and was recruited by Defendant Mayor

Wanda Williams ("Mayor Williams") to return to the City and serve as Director of

Public Works in Mayor Williams' administration.  Subsequently, Spriggs alleges

that Mayor Williams abused her position in directing and demanding that Spriggs

promote or create positions for her family members and that Spriggs was

terminated for refusing to do so.

Before the court are motions to dismiss filed by Mayor Williams and the

City, seeking to dismiss the amended complaint for failure to state a claim upon

which relief can be granted.  (Docs. 24, 26.)  For the reasons set forth below,

Defendants' motions will be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the allegations in the amended complaint, Spriggs was first

hired by the City in or around 1996, when he began working as a janitor.  (Doc. 20,

¶ 16.)  Over the next two decades, Spriggs ascended into higher-level jobs in

various departments within the City.  (*Id.* ¶ 17.)  In or about 2015, Spriggs began

management-level work within the City's Department of Traffic and Engineering,

and in or about early 2017, Spriggs was named the Solid Waste and Logistics

Coordinator within the City's Department of Public Works.  (*Id.* ¶¶ 18–19.)  In or

about August 2017, Spriggs left the City's employment, and began working as

Director of Public Works for Susquehanna Township.  (*Id.* ¶ 21.)

According to Spriggs, after Mayor Williams won the mayoral primary in

May 2021, members of her campaign contacted him to discuss the possibility of

returning to the City as Director of Public Works.  (*Id.* ¶ 22.)  Spriggs initially

declined, but after several requests from members of her campaign and Mayor

Williams herself, Spriggs agreed to return to the City under Mayor Williams'

administration.  (*Id.* ¶¶ 22–23.)  Around August of 2021, then-Mayor Papenfuse

also asked Spriggs to return to the City as Director of Public Works.  (*Id.* ¶ 24.)

Mayor Williams was agreeable to Spriggs returning to the City and working as

Director of Public Works prior to the general election.  (*Id.* ¶ 25.)  Therefore, Spriggs began working for the City again as Director of Public Works on or about September 27, 2021.  (*Id.*)

Spriggs alleges that around November or December of 2021, prior to Mayor Williams taking office, she called Spriggs and demanded that he find other work for her son, Dion Dockens ("Dockens"), who was already employed by the Public Works Department, but had previously suffered a non-workplace injury, exhausted his paid leave, and needed a job he could physically perform.  (*Id.* ¶¶ 26–27.) Mayor Williams requested that Dockens be assigned a different position than his previous one on a sanitation/recycling truck, but Spriggs advised that there were no other available positions.  (*Id.* ¶ 28.)  Mayor Williams warned Spriggs to find something or she would get very upset, then gave Spriggs until the end of the day to do so.  (*Id.* ¶ 29.)  Spriggs re-assigned Dockens to the Highway Department collecting leaf bags for approximately two months until Dockens was able to return to his prior job.  (*Id.* ¶ 30.)

According to Spriggs, shortly after Mayor Williams' inauguration, in about January or February 2022, Mayor Williams instructed Spriggs via multiple phone calls to create a management position for Dockens, Mayor Williams' granddaughter, her nephew, and various other members of her family.  (*Id.* ¶ 31.) Spriggs began working on either making Dockens a City Island Superintendent or

a Sanitation Supervisor.  (*Id.* ¶ 32.)  However, the position description for the

Sanitation Supervisor position contained certain credentials that Dockens did not

have, so Mayor Williams instructed Spriggs to alter the job description to fit

Dockens' qualifications.  (*Id.* ¶ 33.)

Spriggs next alleges that in February of 2022, Mayor Williams called him

and demanded that he discipline an employee for talking about Dockens.  (*Id.* ¶

34.)  The employee was related to the ex-girlfriend of one of Mayor Williams'

sons.  (*Id.*)  Spriggs advised Mayor Williams that he could not discipline an

employee when no work rules had been violated, but Mayor Williams insisted on

immediate discipline.  (*Id.* ¶ 35.)  Spriggs went to the job site and asked the

employee not to make comments during working hours about Dockens, as it upset

Mayor Williams.  (*Id.* ¶ 36.)  Spriggs then advised Mayor Williams that the issue

was resolved, and that the employee was counseled.  (*Id.* ¶ 37.)  Approximately

two days later, that employee filed a complaint against Spriggs and the City.  (*Id.* ¶

38.)

Spriggs asserts that in March of 2022, chief counsel for the State Ethics

Commission visited the City and explained what constituted ethics violations,

putting employees on notice.  (*Id.* ¶ 39.)  At that point, Spriggs decided that he

would not comply with Mayor Williams' demands regarding jobs for her family

members.  (*Id.* ¶ 40.)  In April of 2022, Mayor Williams called Spriggs screaming,

asking why he had not yet promoted Dockens.  (*Id.* ¶ 41.)  Mayor Williams advised that Dockens was considering moving to Ohio if he was not promoted, and threatened to fire Spriggs and his entire management staff if Dockens did so.  (*Id.*)

Spriggs contends that on April 29, 2022, Spriggs notified the City Solicitor, Neil Grover ("Grover"), of Mayor Wiliams' demands regarding Dockens, and that he believed her actions violated the state's ethics law.  (*Id.* ¶ 42.)  Spriggs advised Grover that he was no longer willing to sign off on Dockens' promotion, because Dockens was not qualified for the promotion and Mayor Williams had asked Spriggs to alter the job requirements so that Dockens would be qualified.  (*Id.* ¶ 43.)  Spriggs told Grover that he believed this to be an ethics violation and wanted no part of it.  (*Id.* ¶ 44.)  Grover advised that promoting Dockens could result in ethics violation charges against Spriggs, Grover, Mayor Williams, and the City, and that they would not promote him.  (*Id.* ¶ 45.)

Next, Spriggs alleges that later that same day, Mayor Williams called Spriggs and stated that Grover had informed her of his conversation with Spriggs regarding Dockens and the risk of an ethics violation.  (*Id.* ¶ 46.)  Mayor Williams was upset and requested that Spriggs report to her office immediately.  (*Id.* ¶ 47.) However, following that phone call, Mayor Williams' assistant Lisa Blackston called Spriggs and informed him that Mayor Williams would instead meet him on Monday, May 2, 2022.  (*Id.* ¶ 48.)  On Monday, May 2, 2022, Mayor Williams had

Spriggs, Grover, and Human Resources Director Joni Willingham ("Willingham") report to her office for a meeting. (*Id.* ¶ 49.) During this meeting, Grover informed Mayor Williams that Dockens is not eligible for a promotion into management because it violates ethics rules. (*Id.*) Mayor Williams then threatened to fire all three of them if they didn't come up with a way to promote Dockens. (*Id.* ¶ 50.)

Spriggs further alleges that in May of 2022, Mayor Williams called Spriggs after Spriggs disciplined an employee who walked off the job during his shift. (*Id.* ¶ 51.) The employee at issue was the boyfriend of Mayor Williams' daughter. (*Id.*) That employee later resigned, and Mayor Williams was upset with Spriggs about the matter. (*Id.*)

Spriggs asserts that on or about June 16, 2022, Dockens was caught by his manager driving a City-owned truck in York without having a proper license. (*Id.* ¶ 52.) At Spriggs' direction, Dockens was disciplined on Friday, June 17, 2022, and was given a one-day unpaid suspension. (*Id.* ¶ 53.) Due to a federal holiday, the next business day was Tuesday, June 21, 2022. At approximately 8:15 a.m. on June 21, City Business Administrator Daniel Hartman ("Hartman") texted Spriggs. (*Id.*) Spriggs called Hartman and Hartman instructed Spriggs to come to his office right away. (*Id.*) When Spriggs inquired as to why, Hartman stated that he had to

administer a discipline to Spriggs.  (*Id.* ¶ 55.)  When Spriggs inquired about the reason, Hartman replied "I'll tell you when you get here."  (*Id.*)

Spriggs asserts that on the way to the City Government Center, he called Mayor Williams, who did not answer.  (*Id.* ¶ 56.)  When Spriggs arrived, he asked Mayor Williams' secretary what was going on, and the secretary responded "it's f---ed up.  [Hartman] will be out in a moment."  (*Id.* ¶¶ 57–58.)  At that point, Willingham arrived and went into the conference room with Spriggs.  (*Id*. ¶ 59.)  Spriggs asked Willingham what was going on, and she shrugged and said nothing.  (*Id.* ¶ 60.)  Hartman arrived with his assistant and sat across from Spriggs, next to Willingham.  (*Id.* ¶ 61.)  Hartman slid a piece of paper across the table to Spriggs, and it was Spriggs' termination letter.  (*Id.*)  The termination letter stated that Spriggs was being fired for, *inter alia*, signing payroll action forms the prior business day.  (*Id.* ¶ 62.)  Spriggs replied that he signed the forms because he had been instructed to do so by the City's Finance Director Marita Kelley ("Kelley"), and the City's Payroll Manager Sarah Fedor ("Fedor").  (*Id.* ¶ 63.)

After Hartman contested this assertion, Spriggs informed Hartman that he had emails to prove it.  (*Id.* ¶ 64.)  Hartman and Willingham looked at each other, shook their heads, and Hartman said "the Mayor just wants you fired."  (*Id.* ¶ 65.)  Willingham was present when Spriggs signed the payroll forms that were given to him.  (*Id.* ¶ 66.)  Kelley and Fedor also approved the payroll action forms at issue,

but neither was fired.  (*Id.* ¶ 66.)  Mayor Williams and the City Council subsequently approved the payroll actions.  (*Id.* ¶ 67.)  Spriggs contends that the explanation for his termination was a pretext, and that he was instead terminated for reporting, objecting to, and refusing to be complicit in Mayor Williams' unlawful conduct.  (*Id.* ¶ 68.)

Spriggs initiated this action by filing a complaint on September 20, 2022. (Doc. 1.)  Both Defendants filed motions to dismiss the complaint.  (Docs. 10, 16.) Spriggs then filed an amended complaint on January 3, 2023.  (Doc. 20.)  The amended complaint is now the operative complaint.  The prior motions to dismiss were denied as moot the same day the amended complaint was filed.  (Doc. 21.)

Count One of the amended complaint is a First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983 against Mayor Williams in her individual capacity.  Count Two is a claim against the City under the PWL.  Count Three is a claim against the City for wrongful termination under Pennsylvania law.  Finally, Count Four is a claim for racial discrimination under 42 U.S.C. § 1981 against Mayor Williams.

On January 13, 2023, Mayor Williams filed a motion to dismiss the amended complaint and brief in support.  (Docs. 24, 25.)  On January 17, 2023, the City filed a motion to dismiss the amended complaint and brief in support.  (Docs. 26, 27.)  Spriggs filed timely briefs in opposition to the motions.  (Docs. 28, 29.)

Mayor Williams filed a reply brief on February 3, 2023.  (Doc. 29.)  The City filed a reply brief on February 10, 2023.  (Doc. 31.)  Thus, both motions are ripe for resolution.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  The court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367.  Further, venue is appropriate under 28 U.S.C. § 1391.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

### DISCUSSION

### A. 1st Amendment Retaliation under 42 U.S.C. § 1983

Mayor Williams[1] first argues that there could be no violation of the First Amendment because Spriggs was not speaking as a citizen, and his speech was thus not constitutionally protected. (Doc. 25, pp. 8–13.)[2] Alternatively, Mayor Williams argues that even if Spriggs has adequately pleaded a First Amendment violation, Count One nevertheless fails because Mayor Williams is entitled to qualified immunity. (*Id.* at 17–18.) Here, Mayor Williams asserts that Spriggs' claim against Mayor Williams does not set forth any action by the Mayor violative of clearly established law or rights. (*Id.* at 18.) In so arguing, Mayor Williams notes that Spriggs admits that he signed off on the payroll action forms, and admits that he made the independent decision to decline to promote Dockens. (*Id.*)

---

[1] The court notes that Count One is against Mayor Williams only. However, despite acknowledging this, the City's brief in support of its own motion sets forth a significant amount of argument that Count One should be dismissed. (Doc. 27, pp. 8–17.) Because Count One was not brought against the City, the court declines to consider these arguments.

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

In response, Spriggs argues that the complaint makes it clear that he was speaking as a private citizen because the speech at issue—talking to Grover, the City's Solicitor, about potential ethics violations—was not ordinarily within the scope of his job duties. (Doc. 28, p. 8.)  Additionally, Spriggs argues that Mayor Williams is not shielded by qualified immunity because a reasonable official in her position would know that firing the Public Works Director for reporting ethical improprieties would violate his right to free speech. (*Id.* at 10–11.)

To state a claim under 42 U.S.C. § 1982, a plaintiff must demonstrate that: (1) the alleged misconduct was committed by a person acting under color of state law; and (2) the conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).  For a defendant to be held liable for violation of a plaintiff's civil rights, the defendant must have personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

A public employee seeking to state a claim for retaliation under the First Amendment must allege that "(1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." *Daughter v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014).

For the first element, a public employee's speech is protected by the First

Amendment "when (1) in making it, the employee spoke as a citizen, (2) the

statement involved a matter of public concern, and (3) the government employer

did not have 'an adequate justification for treating the employee differently from

any other member of the general public' as a result of the statement he made." *Hill*

*v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting *Garcetti v.*

*Ceballos*, 547 U.S. 410, 418 (2006)).

For a public employee's speech to be protected by the First Amendment, he

must have spoken as a citizen, meaning that his speech must not have been

undertaken pursuant to his job responsibilities as a public employee. *See Garcetti*,

547 U.S. at 421–22. As the Supreme Court has noted, "when public employees

make statements pursuant to their official duties, the employees are not speaking as

citizens for First Amendment purposes, and the Constitution does not insulate their

communications from employer discipline." *Id.* at 421. However, if "the public

employee's speech is not part of his ordinary job duties or is uttered as sworn

testimony in a judicial proceeding, then the employee is acting as a private citizen

and his speech hence may or may not be protected under the First Amendment,"

depending on whether the speech involved a matter of public or private concern.

*Falco v. Zimmer*, 767 F. App'x 288, 298–99 (3d Cir. 2019).

Here, Mayor Williams asserts that the speech at issue was "undeniably made within [Spriggs'] official duties and clearly involved duties ordinarily within the scope of his job duties as Director of Public Works." (Doc. 25, p. 11.) Mayor Williams asserts that the speech at issue is Spriggs' decision not to promote Dockens, as she argues that "[i]ssues such as employee discipline and promotions are clearly within the ordinary scope of [Spriggs's] job responsibilities as Director of Public Works." (*Id.* at 12.) Spriggs, on the other hand, contends that he was not an ethics advisor or watchdog for the City. (Doc. 28, p. 8.) Further, Spriggs asserts that he was not employed to warn the Mayor about ethical violations, nor was his reporting of purported ethical violations part of the work he was paid to perform on an ordinary basis. (*Id.*)

The court disagrees with Mayor Williams' narrow interpretation of the speech at issue as being "issues such as employee discipline and promotions." Rather, it is clear from the face of the complaint that the speech at issue is Spriggs' report to Grover, which was later relayed to Mayor Williams, that Spriggs believed that complying with Mayor Williams' requests relating to Dockens and other family members would constitute ethical violations.

Several years after *Garcetti*, the Supreme Court noted that the holding in *Garcetti* "said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment." *Lane v.*

*Franks*, 573 U.S. 228, 239 (2014).  Indeed, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen— speech."  *Id.* at 240. Rather, "the critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."  *Id.*  It is clear that reporting the Mayor's purported ethical violations to the City Solicitor was not *ordinarily* within the scope of Spriggs' duties as Director of Public Works for the City.  Because Mayor Williams did not provide argument as to the other elements, the court need not address them at this time.

Having concluded that Spriggs has adequately pleaded a claim for a clearly established constitutional violation, the court likewise concludes that Mayor Williams is not entitled to qualified immunity at this stage of the proceedings given that she has not presented any other argument on qualified immunity.  Therefore, Mayor Williams' motion to dismiss Count One of the amended complaint will be denied.

### B. Racial Discrimination

Next, Mayor Williams argues that Spriggs failed to plead any facts suggesting racial animus, which is fatal to his claim at Count Four for racial discrimination in contracts under 42 U.S.C. §§ 1981.  (Doc. 25, pp. 14–15.)  Mayor Williams contends that Spriggs has pleaded neither facts suggestive of direct

14

evidence of racial discrimination nor facts that would support an inference of racial discrimination.  (*Id.* at 15.)

In opposition, Spriggs argues that the amended complaint pleads that Grover, a white male, also spoke out against Mayor Williams' actions and was not fired.  (Doc. 28, pp. 13–14.)  Furthermore, Spriggs argues that the amended complaint alternatively pleads that Spriggs was not truly fired for improperly approving payroll forms because two white females (Kelley and Fedor) who also approved the payroll forms were not fired.  (*Id.* at 14.)  Spriggs contends that these facts are sufficient to establish a plausible inference of unlawful discrimination, because the amended complaint pleaded two instances of similarly situated white employees who were not terminated for taking the same actions he did.  (*Id.* at 13–14.)

In her reply brief, Mayor Williams argues that the "similarly-situated individuals" identified by Spriggs—Grover, Kelley, and Fedor—are not similarly situated to Spriggs, and his claim therefore fails.  (Doc. 30, pp. 4–8.)

Section 1981 prohibits race-based discrimination in the making and enforcing of contracts.  *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994). To state a claim for racial discrimination under § 1981, a plaintiff must plead sufficient facts to support the following elements: (1) the plaintiff is a member of a racial minority; (2) defendant(s) intended to discriminate on the basis of race; and

(3) the discrimination concerned one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

The court agrees with Mayor Williams that the amended complaint does not plead sufficient facts to establish that the individuals Spriggs asserts to be similarly situated to him do, in fact, meet the necessary criteria. A plaintiff may establish an inference of racial discrimination based on disparate treatment by demonstrating that similarly situated non-protected persons were treated more favorably.

For an individual to be "similarly situated" to a plaintiff, the individuals must be "similarly situated" in all respects—in other words, they must have "dealt with the same supervisor, . . . [been] subject to the same standards[,] and . . . engaged in the same conduct." *Hatch v. Franklin Cnty*, 755 Fed. App'x 194, 199 (3d Cir. 2018) (citing *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018)). Although the amended complaint does assert that Grover, Kelley, and Fedor engaged in the same conduct, it is devoid of facts demonstrating that they dealt with the same supervisor as and were subject to the same standards as Spriggs. Therefore, Spriggs has failed to adequately plead a claim for racial discrimination under § 1981 and Mayor Williams' motion to dismiss Count Four of the amended complaint will be granted. Count Four will be dismissed without prejudice.

### C. Pennsylvania Whistleblower Law

The City argues that Spriggs failed to show concrete or surrounding circumstances connecting his report of waste and/or wrongdoing with his dismissal, and that Count Two, brought under the PWL, must be dismissed.  (Doc. 27, pp. 17–21.)  The City's argument centers around the lapse of time between Spriggs' conversation with Grover about a purported ethics violation on April 29, 2022, and Spriggs' termination on June 21, 2022.  (*Id.*)

In response, Spriggs asserts that he has adequately pleaded that he objected to Mayor Williams' demands to promote and/or advance Dockens, discussed this being a violation of the Pennsylvania Ethics Act with Grover, who is an appropriate employer pursuant to the PWL, that Mayor Williams threatened to terminate him after the report was made, and that he was terminated within weeks for taking action he was authorized to take.  (Doc. 29, pp. 4–5.)

The amended complaint clearly pleads fact sufficient to state a plausible claim that Spriggs' reports to Grover about Mayor Williams' purported unethical requests was connected to his termination approximately six weeks later.  The amended complaint contains specific allegations about Mayor Williams' phone calls and interactions with Spriggs regarding his refusal to carry out her demands. (Doc. 29 ¶¶ 29, 33, 41, 46–47.)  Additionally, the amended complaint specifically pleads that following Spriggs' report to Grover of the purported unethical conduct,

Grover notified Mayor Williams, who then conducted a meeting with Spriggs, Grover, and Willingham in which Mayor Williams explicitly advised that they would all be terminated if they refused to promote Dockens.   (*Id.* ¶ 50.) Furthermore, Spriggs was terminated on the first business day following him directing the discipline of Dockens.  (*Id.* ¶¶ 53–65.)  During the meeting at which he was terminated, the amended complaint asserts that after Spriggs pointed out that the conduct for which he was allegedly being terminated had been approved by other City employees,  Hartman said "the Mayor just wants you fired."  (*Id.* ¶ 65.)  Therefore, Spriggs adequately pleaded a causal connection between his report of waste and/or wrongdoing[3] and his dismissal.  The City's motion to dismiss Count Two will be denied.

---

[3] The court notes that in its reply brief, the City argues that Spriggs' report to Grover does not constitute a report of wrongdoing or waste.  However, the court declines to address that argument, as it was raised for the first time in the City's reply brief.  *See Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 328 F. Supp. 2d 522, 529 (M.D. Pa. 2004) ("It is improper for a party to present a new argument in [a] reply brief.") (quoting *United States v. Medeiros*, 710 F. Supp. 106, 109 (M.D. Pa. 1989)).  The purpose of a reply brief is to respond to arguments raised in an opposition brief, not to raise new arguments.  *United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) (citing *Medeiros*, 710 F. Supp. at 109); *accord* M.D. Pa. L.R. 707 (defining a reply brief as "[a] brief in reply to matters argued in a brief in opposition").  Thus, a moving party cannot support its motion with a sparse argument, wait for the non-moving party to note the sparseness of the argument, then respond with a reply brief that sets forth the full argument that should have been made in the original supporting brief.  According, the argument relating to whether Spriggs adequately pleaded a report of waste and/or wrongdoing is not being considered.

### D. Wrongful Termination

Finally, the City argues that a wrongful termination or wrongful discharge claim can only be brought in the absence of a statutory remedy, and because a potential remedy exists under the PWL, the wrongful termination claim is preempted.  (Doc. 27, pp. 23–25; Doc. 31, pp. 7–8.)

Spriggs concedes that this cause of action is available only if he does not have a statutory remedy for the alleged retaliatory discharge.  (Doc. 29, p. 6.)  However, Spriggs argues that he is entitled to plead mutually exclusive causes of action and if it becomes clear during discovery that he is eligible for remedies set forth in the PWL, the City would be able to raise this issue in a motion under Rule 56.  (Doc. 29, pp. 6–7.)

Pennsylvania is an at-will employment state.  *Geary v. United States Steel Corp.*, 319 A.2d 174 (Pa. 1974).  Although this generally means that an employer may terminate an employer at any time for any reason, there are a limited number of statutory and common law exceptions to at-will employment.  *Paul v. Lankenau Hosp.*, 569 A.2d 346 (Pa. 1990).  One such exception exists where the termination violates "a clear mandate of [Pennsylvania] public policy."  *Mclaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000).

However, it is well settled that courts will not entertain a separate common law action for wrongful discharge where specific statutory remedies are available.

*Clay v. Advanced Computer Applications*, 559 A.2d 917, 918 (Pa. 1989).  Both the

Pennsylvania Supreme Court and federal courts applying Pennsylvania law, have

found preemption of the common law wrongful discharge claim by a more specific

statute.  *See Clay*, 559 A.2d at 89–90 (holding that the PHRA preempted a

common law wrongful discharge claim based on discrimination); *Bruffett v.*

*Warner Comms., Inc.*, 692 F.2d 910, 920 (3d Cir. 1982) (holding that Pennsylvania

courts would not create a common law wrongful discharge claim where statutory

relief existed under the PHRA); *Pierce v. New Process Company*, 580 F. Supp.

1543, 1546 (W.D. Pa. 1984) (granting summary judgment to the defendant on a

wrongful discharge claim because statutory relief existed under the ADEA).  It is

the existence of the remedy, not the success of the statutory claim, which

determines preemption.  *Jacques v. Azko Int'l Salt, Inc.*, 619 A.2d 748, 753 (Pa.

Super. 1993).

Indeed, courts have held that the PWL has the same preemptive effect on the

common law public policy exception as other statutes, and have accordingly barred

plaintiffs from pursuing the public policy exception when the PWL affords a

statutory remedy.  *See, e.g., Katzenmoyer v. City of Reading, Pa.*, 158 F.Supp. 2d

491, 503–04 (E.D. Pa. 2001) ("Under Pennsylvania law, there is an action for

wrongful discharge only where there is no available statutory remedy for the

aggrieved employee . . . Courts have specifically applied this rule to bar common

law claims where a plaintiff had cognizable claims under the Whistleblower Act");

*Freeman v. McKellar*, 795 F. Supp. 733, 742 (E.D. Pa. 1992) ("On the facts

alleged, plaintiff has an appropriate statutory remedy under the Whistleblower Act.

. . . Accordingly, the court will dismiss Counts III and IV").  Accordingly, the

City's motion to dismiss Count Three will be granted with prejudice.

## CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part both

Mayor Williams' and the City's motions to dismiss.  (Docs. 24, 26.)  An

appropriate order follows.

s/Jennifer P. Wilson<br>JENNIFER P. WILSON<br>United States District Court Judge<br>Middle District of Pennsylvania

Dated: June 29, 2023