IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATHANIEL SPRIGGS** | : | CIVIL ACTION |
| Plaintiff, | : | Case 1:22-cv-01474-JPW |
| v. | : | |
| **CITY OF HARRISBURG** and **MAYOR WANDA WILLIAMS** (in her individual capacity only) | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Nathaniel Spriggs complains as follows against Defendants City of Harrisburg and Mayor Wanda Williams (in her individual capacity only):[1]

**I.   Introduction**

1.   Harrisburg Mayor Wanda Williams has a big family. And as Mayor, she has seized upon her official position to create a taxpayer-funded jobs program for her family. While engaging in this dubious exercise of public service, she pressured other city officials to assist her. Plaintiff was one of them. But Plaintiff - a long-time and faithful public servant to the City of Harrisburg - refused to go along quietly with Williams' efforts to enrich her family at the public's expense. Williams (having no further use for Plaintiff) fired him after he

---

[1] Plaintiff files this second amended complaint pursuant to this Court's Order dated June 29, 2023 (ECF No. 37) granting in part and denying in part Defendants' motion to dismiss Plaintiff's amended complaint.

objected to her misconduct.  Because her actions were pellucidly illegal, Plaintiff prosecutes this action to redress the brazen violations of the law that have caused him - and the City's taxpayers - great harm.

2.      Plaintiff presents claims for violations of his First Amendment rights, violations of the Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq*. ("PWL"), and for disparate treatment on account of race.

## II.    Parties

3.      Plaintiff is a Black male citizen of the United States.  He resides in Dauphin County, Pennsylvania.

4.      Defendant City of Harrisburg ("City") is the county seat of Dauphin County, and maintains its business address at The Rev. Dr. Martin Luther King, Jr. City Government Center, 10 North Second Street, Harrisburg, PA 17101.

5.      The City is a third class city of the Commonwealth of Pennsylvania, existing under provisions of the Third Class City Code, 53 P.S. § 35101 *et seq*.

6.      The City operates pursuant to the Optional Third Class City Charter Law, 53 P.S. § 41101 *et seq*.

7.      Defendant Wanda Williams ("Williams") is a Black female citizen of the United States.  She resides in Dauphin County, Pennsylvania.

8.      Williams was first elected to Harrisburg City Council in 2005 and served as Council President from 2010 through 2021.

9. In 2021, Williams was elected Mayor of the City, and her term began in January 2022.

10. According to Williams' campaign and official publications, she has been married to her husband for more than 43 years and together they have 5 children, 18 grandchildren and 13 great-grandchildren.

11. Based on her years in public service, upon information and belief, Williams is well aware that her official position in government may not be utilized to create a *de facto* jobs program for her family.

### III. Jurisdiction and Venue

12. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

13. The United States District Court for the Middle District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to the claim(s) within the Court's original jurisdiction that they form part of the same case or controversy.

14. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)

because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are subject to personal jurisdiction in the Middle District of Pennsylvania.

**IV.     Factual Background**

15.    Plaintiff was born and raised in Dauphin County, having graduated the former William Penn High School in 1989.

16.    Plaintiff was first hired by the City in or about 1996, starting in the position of janitor.

17.    Over the next two decades Plaintiff ascended into higher-level jobs in various city departments.

18.    In or about 2015, Plaintiff began performing management-level work within the City's Department of Traffic and Engineering.

19.    In or about early 2017, Plaintiff was named Solid Waste and Logistics Coordinator within the City's Department of Public Works.

20.    During his first 20 years as a City employee, Plaintiff also managed to earn his Associate's degree from Harrisburg Area Community College, his Bachelor's degree from Wilson College and his Master's degree in Business Administration from Eastern University.

21.    In or about August 2017, Plaintiff left the City's employ to accept the position of Director of Public Works for Susquehanna Township, Dauphin County.

22.    Shortly after Williams won the City's Democratic mayoral primary in May 2021, her campaign operatives contacted Plaintiff to discuss the possibility of his returning to the City

as Director of Public Works. Plaintiff initially declined the overture.

23. After several additional entreaties from Williams' campaign and Williams herself, Plaintiff agreed to return to the City and serve as Director of Public Works in a Williams administration.

24. In or August 2021, then-Mayor Papenfuse asked Plaintiff to return to the City as Director of Public Works at that time, irrespective of the fact that Plaintiff had already agreed to return should Williams win the November general election.

25. Williams was agreeable to Plaintiff rejoining the City even before the general election, and so Plaintiff began his second stint with the City on or about September 27, 2021. He was Director of Public Works.

26. In or about November-December 2021, even before Williams took office, she called Plaintiff and demanded he find other work for her son Dion Dockens, then an employee within the Public Works Department.

27. Upon information and belief, Dockens had sustained a non-work related injury and had exhausted his paid leave time. He needed a different job, one that he could physically do, so that he could get back on the payroll.

28. Williams wanted Plaintiff to assign her son Dockens to a different job than the one he had been performing on a sanitation/recycling truck. Plaintiff told Williams that he had no other available positions.

29. Williams warned Plaintiff to find something or I'm going to very upset. She gave him

until the end of the day.

30. Plaintiff did what he was told, and re-assigned Dockens to the Highway Department collecting leaf bags for approximately two months until Dockens was able to return to his actual job.

31. Shortly after Williams was inaugurated, in or about January - February 2022, Williams instructed Plaintiff via multiple telephone calls to create a management position for her son Dockens, for Williams' granddaughter, for Williams' nephew, and various other members of Williams' family.

32. Plaintiff began working on two scenarios for Dockens. One scenario was to make Dockens a City Island Superintendent. The other was to make Dockens a Sanitation Supervisor.

33. Because the Sanitation Supervisor position required certain credentials that Dockens did not possess, Williams instructed Plaintiff to alter the job description to fit her son's qualifications.

34. In or about February 2022, Williams called Plaintiff and demanded that he discipline an employee for talking about Dockens. The employee was related to an ex-girlfriend of another son of Williams.

35. Plaintiff informed Williams he had no right to discipline that employee as no work rules had been violated. Williams nonetheless insisted that Plaintiff discipline the employee immediately.

36. Plaintiff proceeded to the job site and spoke with the employee. Plaintiff asked the employee to not make comments during working hours about Dockens, as the Mayor was very upset.

37. Plaintiff contacted Williams and let her know he had counseled the employee and the issue was resolved.

38. Approximately two days later, the employee filed a complaint against Plaintiff and the City.

39. In or about March 2022, the City was visited by the chief counsel of the State Ethics Commission. Counsel explained what constituted ethics violations and that he was putting all employees on notice.

40. At that point, Plaintiff refused to carry out the Mayor's demands regarding jobs for her family.

41. In or about April 2022, Williams screamed at Plaintiff on the telephone, asking him why he had not yet promoted Dockens. The Mayor stated Dockens was considering moving to Ohio if he was not promoted. Then the Mayor threatened to fire Plaintiff and his entire management staff if Dockens moved away.

42. On or about April 29, 2022, Plaintiff notified City Solicitor Neil Grover (White male) of the Mayor's demands regarding Dockens, and that her actions were in violation of the state's ethics law.

43. Plaintiff told Grover that he was no longer willing to sign off on Dockens' promotion.

Plaintiff told Grover that Dockens was not qualified and that Williams had requested that he alter job requirements to cater to her son.

44. Plaintiff told Grover he felt this was an ethics violation and he wanted no part of it.

45. Grover responded that promoting Williams' son could result in ethics violation charges against Plaintiff, Grover, Williams and the City, and that they were not going to do it.

46. Later that same day Williams called Plaintiff. She told him Grover had informed her of their conversation regarding Dockens and the risk of an ethics violation.

47. Williams was very upset and wanted Plaintiff to report to her office right away.

48. Williams' assistant Lisa Blackston, however, called Plaintiff immediately thereafter and informed Plaintiff that the Mayor would meet with him on Monday, May 2nd instead.

49. On Monday May 2, 2022, Williams summoned Plaintiff, Solicitor Grover and Human Resources Director Joni Willingham for a meeting. Grover informed Williams that Dockens will not be eligible for a promotion into management because it violates ethics rules.

50. Williams then threatened to fire all three of them if they didn't come up with a way to promote Dockens.

51. In or about May 2022, Williams angrily called Plaintiff after he disciplined an employee for walking off the job during his work shift. The employee at issue was the boyfriend of Williams' daughter. The employee at issue later resigned and Williams was furious with Plaintiff about the matter.

52. On or about June 16, 2022, Dockens was caught by his manager driving a City-owned truck in York without having a proper license.

53. At Plaintiff's direction, Dockens was disciplined on Friday, June 17, 2022, and given a one-day unpaid suspension.

54. Due to the federal holiday, the next business day was Tuesday, June 21st. At approximately 8:15 a.m. that morning, City Business Administrator Daniel Hartman texted Plaintiff. Plaintiff called him and Hartman said to come to the office right away.

55. Plaintiff asked why. Hartman said I have a discipline to administer. Plaintiff asked who's discipline is it? Hartman said yours. Plaintiff asked what did I do? Hartman replied I'll tell you when you get here.

56. On the way to the City Government Center, Plaintiff called Williams. Williams didn't take the call.

57. When Plaintiff arrived at the City Government Center, he asked the Mayor's secretary what's going on.

58. The secretary responded, it's f - - - - d up. Dan [Hartman] will be out in a moment.

59. HR Director Willingham then showed up. She and Plaintiff went into the conference room.

60. Plaintiff asked Willingham what's this about? Willingham shrugged her shoulders, and said nothing.

61. Hartman then walked in with his assistant. He sat across from Plaintiff, next to

Willingham. Hartman slid over a sheet of paper, which was Plaintiff's termination letter.

62. In the termination letter, Plaintiff was informed he was being fired, *inter alia*, for signing payroll action forms the prior business day.

63. Plaintiff replied that he had signed the forms because he had been instructed to do so by the City's Finance Director Marita Kelley, and the City's Payroll Manager Sarah Fedor.

64. After Hartman contested Plaintiff's assertion, Plaintiff informed Hartman that he had the emails to prove it.

65. Hartman and Willingham then looked at each other, and shook their heads. Hartman finally said, "the Mayor just wants you fired."

66. Although Kelley and Fedor also approved the payroll action forms at issue, neither was fired. Willingham herself was present when Plaintiff signed the forms that were given to him to sign.

67. The Mayor herself had approved the payroll actions, as had City Council.

68. As made plain above, the explanation Defendants provided for terminating Plaintiff's employment was phony and the real reason was that Williams took exception to Plaintiff's reporting of, objections to, and refusal to be complicit in, her unlawful conduct.

**FIRST CAUSE OF ACTION
(AGAINST WILLIAMS IN HER INDIVIDUAL CAPACITY ONLY)
VIOLATION OF THE FIRST AMENDMENT
<u>TO THE UNITED STATES CONSTITUTION</u>**

69. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70. As Mayor, Williams' actions toward Plaintiff were taken under color of state law.

71. The First Amendment to the Constitution of the United States provides:

    Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

    U.S. Const. amend. I.

72. These protections of the First Amendment are also binding on the states and their sub-governments through the due process clause of the Fourteenth Amendment to the Constitution of the United States.

73. Section 1103(a) of the Pennsylvania Ethics Act ("Act") specifically provides that "[n]o public official or public employee shall engage in conduct that constitutes a conflict of interest." 65 Pa. C.S. §1103(a).

74. Section 1102 of the Act defines a "conflict of interest," in relevant part, as follows:

    "Conflict" or "conflict of interest." Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated.

    65 Pa. C.S. § 1102.

75. The Act defines "[i]mmediate family" as "[a] parent, spouse, child, brother or sister." 65 Pa. C.S. § 1102.

76. Plaintiff's reports to Grover and the Mayor objecting to the Mayor's violations of the

Act were not duties ordinarily within the scope of his job duties as Director of Public Works.

77. Plaintiff's reports to Grover and the Mayor objecting to the Mayor's violations of the Act were not "part of the work [he] was paid to perform on an ordinary basis." Flora v. Cnty. of Luzerne, 776 F.3d 169, 180 (3d Cir. 2015).

78. Because Plaintiff's reports about violations of the Act were not duties ordinarily within the scope of his job duties as Director of Public Works, Plaintiff's reports to Grover and the Mayor objecting to the Mayor's violations of the Act constitute protected First Amendment activity.[2]

79. Plaintiff's reports about the ethical violations fall outside the scope of his primary job duties and reflect citizen speech.[3]

80. Plaintiff's reports about the ethical violations involved a matter of public concern.

81. Williams offered no justification for treating Plaintiff differently from any other member of the general public as a result of the statement he made.[4]

82. In the fashion described above, Williams knowingly, purposefully and deliberately violated Plaintiff's First Amendment rights.

83. In the fashion described above, Williams acted with malice and reckless indifference to Plaintiff's First Amendment rights.

---

[2] See Flora v. Cnty. of Luzerne, 776 F.3d 169, 179 (3d Cir. 2015) (citing Lane v. Franks, 573 U.S. 228, 238, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014)).

[3] Javitz v. Cnty. of Luzerne, 940 F.3d 858, 865 (3d Cir. 2019).

[4] Flora, 776 F.3d at 175.

84. Plaintiff is entitled to seek redress for the harms caused by Williams's violation of his First Amendment rights pursuant to 42 U.S.C. § 1983.

85. Section 1983 provides, in relevant part:

> Every Person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

86. As a result of this First Amendment violation, Plaintiff suffered damages including, but not limited to, denial of employment, harm to reputation, lost wages, lost fringe benefits, lost seniority, emotional pain and suffering, and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE PENNSYLVANIA WHISTLEBLOWER LAW
## (against the City of Harrisburg only)

87. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

88. The PWL provides in pertinent part:

> [n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 P.S. § 1423(a).

89. The PWL defines "Waste" as "[a]n employer's conduct or omissions which result in

substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." 43 P.S. § 1422.

90. The PWL defines "Wrongdoing" as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422.

91. Plaintiff engaged in protected activity under the PWL by reporting in good faith instances of Waste and Wrongdoing.

92. The City's actions in removing Plaintiff from his job came in direct response to, and in retaliation for, Plaintiff's protected activity and therefore constitute a violation of the PWL.

93. As a result of Defendants' PWL violations, Plaintiff has suffered pecuniary losses, physical damage, emotional pain, anguish and suffering, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, as set forth herein.

**THIRD CAUSE OF ACTION**
**(AGAINST WILLIAMS IN HER INDIVIDUAL CAPACITY ONLY)**
**RACIAL DISCRIMINATION IN MAKING AND ENFORCING CONTRACTS**

94. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

95. Grover, a White male, engaged in similar speech regarding Williams' ethical violations. They both objected to Mayor Williams' ethical and legal transgressions.

96. Grover, like Plaintiff, reported directly to Mayor Williams.

97.     Grover, like Plaintiff, was a Director-level employee.

97.     Grover, like Plaintiff, was a City employee, subject to the City's employee and personnel policies, and standards of conduct.

98.     By taking the aforesaid actions against Plaintiff, and intentionally treating him differently than Grover (who also objected to Mayor Williams' transgressions) on account of Plaintiff's race, Williams violated Plaintiff's right to be free from racial discrimination in the making of enforcing contracts.  This right is protected by 42 U.S.C. § 1981 and enforceable against State actors via Section 1983

99.     Even if a jury credits Williams and determines Plaintiff was fired for improperly approving payroll actions, Plaintiff can still demonstrate he was intentionally treated differently on account of his race.

100.    Kelley, like Plaintiff, reported directly to Mayor Williams.

101.    Kelley, like Plaintiff, was a Director-level employee.

102.    Kelley, like Plaintiff, was a City employee, subject to the City's employee and personnel policies, and standards of conduct.

103.    Kelley was equally responsible as Plaintiff for approving the payroll actions at issue and, unlike Plaintiff, she wasn't fired.

104.    In the manner set forth above, Williams knowingly, purposefully and deliberately violated Plaintiff's federally-protected right to be free of race discrimination in the making and enforcing of contracts.

105. Williams' actions as complained of above were willful, wanton, malicious, and/or were made in reckless disregard of Plaintiff's civil rights.

106. As a result, Plaintiff suffered damages including, but not limited to, denial of employment, damage to reputation, lost wages, lost fringe benefits, lost seniority, emotional pain and suffering, and loss of enjoyment of life.

**WHEREFORE**, upon entering judgment in favor of Plaintiff and against Williams (in her individual capacity) on the First and Third Causes of Action, against the City on the Second Cause of Action, Plaintiff prays that this Court enter an additional order providing as follows:

A. Williams and the City are to be permanently enjoined from discriminating and/or retaliating against Plaintiff on any basis proscribed by the First Amendment, the PWL and 42 U.S.C. § 1981;

B. Williams and the City are to promulgate and/or adhere to a policy prohibiting First Amendment, PWL and 42 U.S.C. § 1981 violations, and are to ensure this policy is enforced;

C. Williams and the City are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for their illegal actions, including but not limited to back pay, front pay, interest, salary, pay increases, bonuses, insurance, benefits, training, promotions, lost 401K or retirement benefits, and seniority. Plaintiff should be accorded those benefits

illegally withheld from the date his employment was terminated until the date of verdict, and Williams and the City should be ordered to provide an accounting of all benefits lost by Plaintiff to ensure Plaintiff is made whole if deemed appropriate by the Court;

D. Plaintiff is to be awarded compensatory damages for the pain, suffering, and humiliation caused by actions of Williams and the City;

E. Williams is to pay punitive damages to Plaintiff as permitted by Section 1983, in an amount believed by the trier of fact to be appropriate to punish her for her willful, deliberate, malicious, reckless and outrageous conduct, and to deter her and other officials who act individually under the color of state law from engaging in such misconduct in the future;

F. Williams is to pay a civil fine of $500 for violating the PWL under the color of an employer's authority, pursuant to 43 P.S. § 1426.

G. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law;

H. This Court should grant any and all other such legal, injunctive and/or equitable relief as it deems necessary, just and appropriate;

I. This Court should maintain jurisdiction over the instant action to ensure full compliance with its Orders therein until such time it is satisfied that its Orders and dictates have been complied with in full by Defendants.

**REQUEST FOR JURY TRIAL**

Plaintiff hereby makes his request for a jury trial for all claims raised in this action.

           Respectfully submitted,

           **WEINSTEIN LAW FIRM, LLC**

By:   /s/ Marc E. Weinstein
       Marc E. Weinstein, Esquire
       500 Office Center Drive
       Suite 400
       Fort Washington, PA 19034
       267.513.1942 tel
       marc@meweinsteinlaw.com
       Counsel to Plaintiff

Dated:      July 20, 2023

## **CERTIFICATE OF SERVICE**

I, Marc E. Weinstein hereby certify that on the 20th day of July, 2023, I caused the foregoing document to be filed via ECF and that Defendants' lawyers are filing users under the ECF system. Upon the electronic filing of a pleading or other document, the ECF system will automatically generate and send a Notice of Electronic Filing to all filing users associated with this case. Electronic service by the Court of the Notice of Electronic Filing constitutes service of the filed document and no additional service upon the filing user is required.

                         By:    /s/ Marc E. Weinstein
                                  Marc E. Weinstein, Esquire
                                  500 Office Center Drive
                                  Suite 400
                                  Fort Washington, PA 19034
                                  267.513.1942 tel
                                  marc@meweinsteinlaw.com
                                  Counsel to Plaintiff