## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATHANIEL SPRIGGS,   )
          ) CIVIL ACTION NO.
    Plaintiff,  ) 1:22-CV-01474
  v.       )
          ) JURY TRIAL DEMANDED
CITY OF HARRISBURG and  )
MAYOR WANDA WILLIAMS, )
          )
    Defendants. )

## DEFENDANT CITY OF HARRISBURG'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Date:  January 7, 2025     Respectfully submitted,

**LAVERY LAW**

*/s/ Murray J. Weed*
Murray J. Weed, Esquire
PA Bar No. 329717
Frank J. Lavery, Jr. Esquire
PA Bar No. 42370
225 Market Street, Suite 304
Harrisburg, PA  17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
mweed@laverylaw.com
flavery@laverylaw.com
*Attorneys for Moving Defendant*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................... 1

II.   SPRIGGS' ONLY CLAIM AGAINST THE CITY ............................... 3

III.  STATEMENT OF QUESTIONS ................................................. 3

IV.   INCORPORATION OF THE STATEMENT OF UNDISPUTED MATERIAL  FACTS ... 4

V.    STANDARD OF REVIEW ....................................................... 4

VI.   LAW AND ANALYSIS .......................................................... 5

    1.   WHISTLEBLOWER CASES REGULARLY END AT THE SUMMARY
        JUDGMENT STAGE ....................................................... 5

    2.   THE CITY OF HARRISBURG FIRED SPRIGGS FOR NON-PRETEXTUAL
        REASONS SO IT ENJOYS A COMPLETE DEFENSE UNDER 43 P.S. § 1424(c) .... 7

    A.   The Termination Was Based On Undisputed Facts ................................ 7

    B.   If There Is Any Valid Reason To Terminate, The

        Termination Is Not Pretextual ...................................................... 13

    3.   SPRIGGS DOES NOT MEET THE DEFINITION OF A WHISTLEBLOWER ......... 24

    A.   No Waste ........................................................................... 26

    B.   No Wrongdoing .................................................................... 26

    C.   No Good Faith Report or Report Untainted By Personal Interest ..................... 27

    D.   No Wronging Of The City Occurred, Plaintiff Got What He Wanted,
        Violations Merely Technical ........................................................ 31

    E.   No Causal Connection .............................................................. 33

    4.   THE CITY ENJOYS IMMUNITY ..................................................... 35

VII.  CONCLUSION .................................................................. 37

CERTIFICATE OF SERVICE .......................................................... 41

i

# TABLE OF AUTHORITIES

**Cases**

*Ambrose v. Township of Robinson*, 303 F. 3d. 488 (Pa. 2002)................................................. 6, 33

*Anderson v. Bd. Of Sch. Dirs. of the Millcreek Twp. Sch. Dist.*, 574 Fed. Appx. 169 (2014)........ 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................... 4

*Anderson v. Millcreek Twp. School Dist.*, 574 Fed. Appx. 169 (C.A. 3 Pa. 2014)...................... 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 5

*Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007)....................................................................... 5

*Bennett v. Republic Services, Inc.* 179 F. Supp. 3d 451 (E.D. Pa. 2016) ............................... 15, 33

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................... 5

*Connor v. Clinton County Prison*, 963 F. Supp. 442 (M.D. PA. 1997)........................................ 34

*Dougherty v. Sch. Dist. of Phila.*, 2012 U.S. Dist. LEXIS 177235 (W.D. Pa.) ..................... 36, 38

*Drill v. Bethlehem- Center Sch. Dist.*, 2006 U.S. Dist. LEXIS 27866 (W.D. Pa. Apr. 28, 2006).14

*Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062 (Pa. Cmwlth. 2013) ........................................ 24

*Frazier v. City of Phila.*, 2020 WL 897698 (E.D. Pa. 2020) ...................................................... 29

*Golaschevsky v. Dept. of Envtl. Res*ources, 683 A.2d 1299 (Pa. 1996)...................................... 15

*Hays v. Beverly Ent. Inc.*, 766 F. Supp. 350 (W.D. Pa. 1991) .................................................... 29

*Johnson v. Res. for Human Dev., Inc.* 789 F. Supp. 2d 595 (E.D. Pa. 2011) .. 5, 6, 7, 14, 15,18, 19

*Kimes v. University of Scranton*, 126 F. Supp. 3d 477 (M.D. Pa.  2015)... 6, 13, 17, 18, 20, 27, 31

*Lape v. Penn.*, 157 Fed. Appx. 491 (C.A. 3 Pa. 2005) ................................................................ 30

*Lee v. Comhar, Inc.*, 2006 U.S. Dist. LEXIS 30618 (3d. Cir., June 26, 2007)....................... 6, 23

*Lindstrom v. City of Corry*, 563 Pa. 579 (2000) ......................................................................... 35

*Livingston v. Borough of McKees Rocks*, 223 Fed. Appx. 84 (3D Cir. 2007)................. 18, 19, 20

*McAndrew v. Bucks County Bd. of Comm'rs* 982 F. Supp. 2d 491 (E.D. PA. 2013). 13, 17, 28, 29

*McAndrew v. Bucks Couty Board of Commissioners*, 183 F. Supp. 3d 713
 (E.D. Pa. 2016)............................................................................................................................ 6

*Meyer v. Cmty. College of Beaver County*, 606 Pa. 539 (2010) ................................................ 36

*Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993)............................................................................ 4

*Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013)......................................................................... 5

*Mosely v. City of Pittsburgh Public School Dist.*, 702 F. Supp. 2d 561 (W.D. Pa.)... 14, 15, 17, 18

*O'Rourke v. Commonwealth*, 566 Pa. 161, 778 A. 2d 1194 (Pa. Supreme Ct.) ..................... 18, 22

*Scott v. Harris*, 550 U.S. 372, 380 (2007) .................................................................................. 5

*Walker-Ellois v. Del Valley Charter High School*, 2007 Phl. Ct. Com. Pl. LEXIS 28 (Pa. C,PL;
 Phila 2007)................................................................................................................................ 35

**Statutes**

1 Pa. C.S. § 1921.......................................................................................................................... 36

42 Pa. C.S. § 8542 ........................................................................................................................ 35

42 Pa. C.S. §§ 8541-8542 ............................................................................................................ 35

43 P.S. § 1224 ............................................................................................................................... 3

43 P.S. § 1421 through 1428 .................................................................................................... 3, 36

43 P.S. § 1422 .............................................................................................................. 24, 27, 38

43 P.S. § 1423 ................................................................................................. 23, 24, 33, 38

43 P.S. § 1424 ........................................................................................ 7, 13, 21, 33

Pa. Const. Art. I, § 11 and 1 Pa. C. S. § 2310 ............................................................ 36

**Rules**

Fed. R. Civ. P. 56 ............................................................................................. 1, 4, 12

## <u>DEFENDANT CITY OF HARRISBURG'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

Defendant, the City of Harrisburg, pursuant to Fed. Rules Civ. Pro., Rule 56, files their Brief in Support to Defendant's Motion for Summary Judgment, coterminously with a Motion for Summary Judgment and Statement of Undisputed Material Facts and shows this honorable Court as follows:

## I.    <u>INTRODUCTION</u>

This is a Whistleblower action in federal court under Pennsylvania law.  At the end of the day Nate Spriggs, a former Department head and cabinet-level employee of the City of Harrisburg, tried to get one of his executives paid more even though Spriggs had been told in advance that no such raise would be granted. Spriggs does not deny the action of seeking the raise.  His defense is that the raise was budgeted for and then later, an employee who was his same rank affirmed the money had been budgeted.  Budgeting, however, is not approval in the City and Spriggs misused the formal approval process knowing the raise would not be activated because there was a standing Mayoral directive against it, and because the raise had been denied previously.  Further, as a long-time City employee and Department Director, Spriggs was intimately familiar with both the budgeting and personnel action/payroll procedures.  He was also terminated because he had terrible relations with the local union, which rose to the level of management's attention. Spriggs was a cabinet level employee, and his actions resulted in a loss of confidence

1

by the City in his decision-making abilities.  He was terminated for actions of which he was fully and solely in control.  The record established that his termination was not pretextual.  The main thing for the Court to decide in this matter as to the City (seeing as the basic fact of Spriggs' action(s) – attempting to initiate an unauthorized pay increase  and his fostering of strife with the union are admitted) is whether or not the admitted action(s) Spriggs took resulted in a non-pretextual termination.  If the termination was non-pretextual, valid for any reason, then Spriggs does not benefit from the Whistleblower law. As such, the City's Motion for Summary Judgment should be granted.  If there is no disputed fact, and the law is clear, then the Motion for Summary Judgment must be granted to the moving party, the City of Harrisburg.

Secondly, Spriggs does not meet the definition of a Whistleblower.  In order to be a Whistleblower, one must report on waste or wrongdoing.  Spriggs admits he never reported anything regarding waste. As to wrongdoing, he never reported anything that the City did that was wrongdoing.  Further, the City timely responded to all his limited complaints.

Lastly, under Pennsylvania law, municipal immunity remains in effect unless specifically waived.  The Whistleblower law does not expressly waive immunity and, as such, the City's immunity has not been waived under the Whistleblower law.

2

## II.    SPRIGGS' ONLY CLAIM AGAINST THE CITY

This matter is before the Court on Spriggs' Second Amended Complaint. [ECF Doc. 38].  The Second Amended complaint makes only one claim against the City.  The claim is that the City violated the Pennsylvania Whistleblower Act, 43 P.S. § 1421 et seq.  The City allegedly violated the Act by "removing Plaintiff from his job [which] came in direct response to, and in retaliation for, Plaintiff's protected activity …" [*Id*., at p. 14, para. 92].  However, the admitted facts show that Spriggs relentlessly pursued a managerial pay increase for his employee, in violation of a clear Mayoral directive.  He did so while also fostering an untenable working relationship with the Public Works union. He was terminated for those actions. He alone was in full and exclusive control of those actions and, as such, no evidence of pretext can be demonstrated.  Mr. Spriggs cost himself his job by his own conduct.

## III.    STATEMENT OF QUESTIONS

A.    Whether the City of Harrisburg fired Spriggs for a non-pretextual reason(s) and as such, enjoys a complete defense to this action under 43 P.S. § 1224(c)?

B.    Whether Spriggs meets the definitions of a Whistleblower?   The suggested answer is no, he does not.  Spriggs admits he did not report waste under the statute. Further, Spriggs' actions do not meet the definition of wrongdoing under the statute.  Lastly, the City prevented

the prospective wrongdoing from occurring through its Solicitor, which even Spriggs admits. As such, the City did not violate the law nor Spriggs' rights.

C.  Whether the City of Harrisburg enjoys immunity under state law?  The answer is yes. The issue has never been resolved by the Pennsylvania Supreme Court as to whether municipal immunity is waived by the Whistleblower law.

## IV.  **INCORPORATION OF THE STATEMENT OF UNDISPUTED MATERIAL FACTS**

For the purposes of this Brief, the City's Statement of Undisputed Material Facts is hereby incorporated as if fully set out herein. See Exhibit A.

## V.  **STANDARD OF REVIEW**

Federal Rules of Civil Procedure 56(a) requires the Court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  The Court must view the record and all reasonable inferences to be drawn therefrom, in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993).  However, the nonmoving party may

not rest on the unsubstantiated allegations of their pleadings.  The nonmoving party must go beyond their pleadings with affidavits, depositions, answers to interrogatories or other recorded evidence to demonstrate specific material facts that give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts, *Scott v. Harris*, 550 U.S. 372, 380 (2007).  It has been found that "… [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  *Id.*  Although the court "must accept the allegations in the [c]omplaint as true, [it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

## VI.    LAW AND ANALYSIS

### 1.    WHISTLEBLOWER CASES REGULARLY END AT THE SUMMARY JUDGMENT STAGE

Case after Whistleblower case has been resolved at Summary Judgment under far less compelling facts. *Johnson v. Res. for Human Dev., Inc*, 789 F. Supp. 2d 595 (2011).  See also, the following cases, each determined on Motion for Summary

Judgment in favor of the defendant employer. *Ambrose v. Township of Robinson*, 303 F. 3d. 488 (Pa. 2002), *Anderson v. Bd. Of Sch. Dirs. of the Millcreek Twp. Sch. Dist.*, 574 Fed. Appx. 169 (2014), *Kimes v. University of Scranton*, 126 F. Supp. 3d 477 (M.D. Pa.  2015), *Lee v. Comhar, Inc.*, 2006 U.S. Dist. LEXIS 30618 (3d. Cir., June 26, 2007), *McAndrew v. Bucks Couty Board of Commissioners*, 183 F. Supp. 3d 713 (E.D. Pa. 2016).

Here, there is no triable issue. Mr. Spriggs' act of seeking a management pay raise for his employee is admitted, and, as a cabinet-level employee, he knew or should have known the Mayor's standing directive as to no raises.  Secondly, Plaintiff does not deny angering the union by his actions, or that during his tenure union relations with Public Works were highly agitated at best.  The record reveals that Spriggs regularly incensed union leadership, to the point that Public Works employees began to resign, a fact  that brought great concern for City management. These admitted facts constitute wholly non-pretextual reasons to terminate.  If there was no pretext in the termination, there can be no Whistleblower violation and under *Johnson v. Res. for Human Dev, Inc*, 789 F. Supp. 2d 595 (2011) Summary Judgment should be granted to Defendant City of Harrisburg.

When there are no material factual disputes (here there are none because the attempt to initiate a management pay raise and Sprigg's fostering of union strife are admitted) then the Whistleblower law provides a complete defense: the **termination**

6

**cannot be deemed pre-textual if there is any valid reason to terminate.** See 43

P.S. § 1424(c) and *Johnson*, supra.)

### 2. THE CITY OF HARRISBURG FIRED SPRIGGS FOR NON-PRETEXTUAL REASONS SO IT ENJOYS A COMPLETE DEFENSE UNDER 43 P.S. § 1424(c)

#### A. The Termination Was Based On Undisputed Facts

The City has a specific process dealing with raises. In short, the City adopts

a budget. The same has line-items relating to salaries. However, just because a

salary is budgeted, the same does not *per se* mean that an individual in any given

position will ever be paid the full line-item amount. [Statement of Undisputed

Material Facts., paras. 8, 53].[1] Instead, a Payroll Action Form must be completed.

The form ultimately requires five (5) signatures. [*Id.*, paras. 6, 7, 8]. Plaintiff is a

former Department Director of Public Works for the City of Harrisburg. [Plaintiff's

Second Amended Complaint, ECF. Doc. 38]. He was a very experienced Director.

[Statement of Undisputed Material Facts, paras. 5, 160]. His position was a cabinet

level position. [*Id.*, para. 4]. Spriggs, as a Department Director, regularly came to

the Human Resources office to sign Payroll Action Forms. [*Id.*, para. 9]. If a

personnel form involved Public Works, it would come to Spriggs for approval. [*Id.*,

para. 165]. Spriggs had submitted the required forms for pay raises on other

---

[1] For the convenience of the Court and brevity, record citations are to the Statement of Undisputed Material Facts. The full citation to the deposition or Exhibit is of course set out completely in the Statement and to the Appendix of Exhibits.

occasions prior to the event where he was terminated. [*Id.*, para. 163]. A directive that there would be no raises for Public Works management was affirmed by the Mayor in February 2022. [*Id.*, para. 17]. In April 2022, Spriggs tried to get himself and his employee, Austin Green, raises using a Payroll Action Form. [*Id.*, para. 13]. The praises were denied by the Mayor's office. [*Id.*, para. 15]. Spriggs never questioned the denial. [*Id.*, paras. 16, 227, 228].

In June 2022 Spriggs tried to put though a raise for his employee Austin Grifin a second time, despite the standing directive. [*Id.*, para. 19]. The full-time Mayor was out of the office on vacation. [*Id.*, para. 104]. Spriggs contacted his organizational equal, Marita Kelley, the Finance Director, to confirm that there was a budgeted amount in a line item for the position held by Austin Griffin (Spriggs' employee that he had also previously tried to get a raise for). [*Id.*, paras. 56, 59]. Marita Kelly had no authority to direct or order Spriggs to do anything. [*Id.*, paras. 50, 51, 52]. Further, Kelly was not privy to the Mayor's directive relating to the Griffin raise. [*Id.*, para. 61]. Kelly's job would be to look in the budget book and see what positions had funding. She did not complete any Payroll Action Form. She told Spriggs that Griffin's salary line item had money in it. [*Id.*, paras. 53, 62, 63]. Spriggs asked her if there was a cost-of-living increase in the budget for Griffin and Kelly found that the line-item for Griffin for his salary was at a budget maximum, and she told Spriggs the same. [*Id.*, para. 62]. However, Kelly knew that simply

because there was money in the budget, approval of a salary increase was not a foregone conclusion. [*Id.*, para. 53]. Spriggs never discussed the prior denial with Martita Kelly. He never discussed the second attempt to get Griffin a raise with Kelly except by email. [*Id.*, paras. 229, 232]. In the week prior to Plaintiff's termination, Spriggs' office generated a Personnel Action request which was processed into a Payroll Action Form. One of Spriggs' staff members generated the form. [*Id.*, para. 20]. Spriggs came to Human Resources to sign the Payroll Action Form on June 17, 2022. [*Id.*, para. 21]. In advance of him coming to sign the form, he never discussed the second attempt to get Griffin a raise with Joni Willingham, the Human Resources Director. [*Id.*, para. 233]. Joni Willingham saw the form in her usual course of business. [*Id.*, paras. 21, 22, 23]. She then went to her supervisor, Dan Hartman, the Business Administrator, to find out if the Mayor had ever lifted the no raise directive. [*Id.*, para. 23]. Hartman was very upset to learn what Spriggs was doing, and he told Willingham the Mayor had never changed her directive. [*Id.*, para. 24]. He believed Spriggs' action was insubordination. [*Id.*, para. 11]. He believed that Spriggs was well aware he was violating a standing directive, and that Willingham had caught Spriggs doing it. [*Id.*, para. 110]. Hartman was aware that Spriggs had also made multiple attempts to get himself a raise. [*Id.*, para. 84]. It was Hartman's idea to terminate Spriggs. [*Id.*, paras. 91, 108].

Hartman then contacted the Mayor and suggested to her that Plaintiff should be terminated for his actions. [*Id.*, para. 108]. The Mayor was in Florida on a vacation when the events transpired. [*Id.*, para. 104]. The Mayor wanted to think about it but later she agreed to the termination. [*Id.*, para. 118]. There were two reasons why Spriggs was terminated. [*Id.*, para. 92]. Prior to the attempt to get Griffin more money against the directive, Spriggs had become increasingly embroiled in issues with AFSCME, the Public Works union. [*Id.*, para. 92]. In addition to seeking an unauthorized pay raise, the City had a growing concern about Spriggs' increasingly negative relationship with AFSCME. The situation got so bad that there was an actual shouting match at a *Loudermill* hearing heard by the City Solicitor, Neil Grover (he was participating electronically). [*Id.*, para. 92]. The AFSCME complaints about Spriggs were centered on issues of trust and an increasingly hostile work environment for Public Works employees under Spriggs' management. [*Id.*]. The shouting match occurred on June 16, 2022. [*Id.*, para. 93]. However, as early as February 2022, Hartman began hearing concerns from the union about Spriggs; particularly, there were issues involving two union employees and the way Spriggs had treated the employees. [*Id.*, para. 95]. The employees had been moved by Spriggs from their prior positions to the consternation of the union. [*Id.*, para. 96]. A negotiated settlement had to be reached regarding one of the employees. [*Id.*, para. 97]. Further, the Executive Director of AFSCME repeatedly

complained about Spriggs' management style and that Spriggs was targeting employees at Public Works.  [*Id.*, para. 99].  These events occurred before Spriggs tried to get the Griffin raise through the Payroll system.  [*Id.*, para. 100].  Hartman terminated Spriggs on June 21, 2022.  [*Id.*, para. 89].  Both reasons for termination (the directive violation and the union issue) were plainly listed in the termination notice.  [Ex. H, termination letter].

Spriggs admits he tried to get a raise for Austin Griffin and himself in April 2022.  [*Id.*, para. 222].  He admits he knew his raise was denied because the Mayor told him that his raise could not go forward.  [*Id.*, para. 223, 224].  He knew Griffin's original raise request would also not go forward.  [*Id.*, para. 224, 227, 228].  He admits he tried to get Griffin's raise through a second time.  [*Id.*, para. 234].  He admits he was aware of the budgeting process and Payroll form process prior to submitting the form.  [*Id.*, paras. 163, 165].  Spriggs knew AFSCME had made complaints about him and, in particular, some of the actions he'd taken.  [*Id.*, para. 256, 257].  Spriggs agreed there were several labor management issues between the union and Public Works during his tenure.  [*Id.*, para. 257].  Spriggs understood he was being fired for two reasons.  [*Id.*, paras. 239, 255].

The actual whistleblowing alleged in this matter is Spriggs' comments to City Solicitor Neil Grover about the Mayor's wrongdoing (he admits he never complained about waste).  [*Id.*, para. 244].  He never reported to his supervisor, Dan

11

Hartman, about his concerns. [*Id.*, para. 181]. He never reported any of his concerns to the State Ethics Commission prior to his termination even though they were physically present at City Hall at the request of the Solicitor Neil Grover, to perform training in 2022. [*Id.*, para. 183]. The only person he spoke to about his concerns was the Solicitor. [*Id.*, para. 184]. Spriggs claims he told Grover about the Mayor trying to get her son promoted, hiring relatives (a granddaughter and a niece) and that the Mayor had asked for a City car to be issued to a City employee (in and of itself not an ethical or other violation). [*Id.*, para. 192]. These are the totality of the alleged complaints as to wrongdoing alleged under the Whistleblower law. [*Id.*, para. 192]. The undisputed facts show that the Mayor's son was never promoted. [*Id.*, paras. 203, 205], the relatives were not hired by Public Works [*Id.*, para. 246], and Spriggs did not know if the car requested for the City employee was used for personal use. He simply felt the car would be used for personal use. However, he was never told, nor did he know that the car was going to be for personal use. [*Id.*, para., 192].

Once it is established that there is no material fact the Court can, of course, apply the law and determine that judgment is appropriate for the movant where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

B.    If There Is Any Valid Reason To Terminate, The
      Termination Is Not Pretextual

The Pennsylvania Whistleblower Law provides that:

> § 1424 (c) Defense – It shall be a defense to an action
> under this section if the defendant proves by a
> preponderance of the evidence that the action of the
> employer occurred for separate and legitimate reasons
> which are not merely pretextual.

*43 P.S. § 1424 (c)*

No one wanted Spriggs to act beyond the parameters within which he was to

act.  No one forced Spriggs' actions.  No one forced him to submit the Payroll Action

form for Griffin a second time.  No one caused him to infuriate the union.

To make out a case of retaliatory termination under the Whistleblower law

Spriggs must show: 1) wrongdoing and 2) a causal connection between a report of

wrongdoing and the adverse employment action.  *McAndrew v. Bucks County Bd. of

Comm'rs* 982 F. Supp. 2d 491 (E.D. PA. 2013).  Both elements are required.  There

must be a good faith report of wrongdoing or waste that is not based on a simply

technical violation, and it must be shown that even if the report is sound in every

aspect, that the report is causally linked to the adverse employment action.  *Kimes v.

University of Scranton*, 126 F. Supp. 3d 477 (M.D. Pa. 2015) (leave to file for

reconsideration den. 2017).

As such, Spriggs must show that there was a connection between the alleged

reporting (his conversation with Solicitor Neil Grover in April 2022) and his

termination in June 2022. To keep the City in this case, he must prove that the City

wronged him. He cannot. *Mosely v. City of Pittsburgh Public School Dist.*, 702 F.

Supp. 2d 561 (W.D. Pa.).

First, mere temporal proximity is not enough to show a connection. **For a**

**Whistleblower complaint to succeed there must be no other valid reason for the**

**termination.** *Johnson v. Resources for Human Dev., Inc.* 789 F. Supp. 2d 595 (E.D.

Pa. 2011) (analyzing the Pennsylvania Whistleblower law). *Johnson* holds directly

on the point. In J*ohnson* the court found, using the Pennsylvania Whistleblower

statute, that a terminated employee did not identify any "concrete facts" to support

her claim that a report of wrongdoing was connected to her termination. The mere

fact that the termination followed the employee's report was not enough to establish

the nexus required. *Johnson*, at 602. The court there also noted that the report was

made in 2004, and the termination was in 2009. In this case, the termination

occurred temporally two months (about seven weeks) after Spriggs spoke with the

Solicitor. The fact that in *Johnson* there was a five-year gap from knowledge to

termination still does not help Plaintiff in that a two-year gap is still too much to

show a temporal connection, *Drill v. Bethlehem- Center Sch. Dist.,* 2006 U.S. Dist.

LEXIS 27866 (W.D. Pa. Apr. 28, 2006). Even a far narrower gap of four months

between reporting and termination afterwards is not enough to establish the

connection required. *Golaschevsky v. Dept. of Envtl. Res*ources, 683 A.2d 1299 (Pa.

1996) (although not a federal case, all federal cases use the Pennsylvania law). Most importantly, even a seven-week period from reporting to termination did not itself prove a causal connection. *Bennett v. Republic Services, Inc*. 179 F. Supp. 3d 451 (E.D. Pa. 2016).

Secondly, for a Whistleblower complaint to succeed, there must be no other valid reason for the termination. *Johnson, supra.* Once temporal proximity is addressed, the next step is to look at other "concrete" causal connections. Concrete facts must be shown by the Plaintiff to prove the causal connection between the termination and the reporting. *Johnson, supra., Mosley v. City of Pittsburgh Public School Dist.*, 702 F. Supp. 2d 561 (W.D. Pa.). What then are examples of concrete facts a plaintiff must prove to show a causal connection? An example would be proof that there was a specific direction to not report a matter or a warning that if such a report were filed, there would be adverse consequences. *Mosley.* Here, the matter was reported (to Solicitor Grover only) and the desired actions that Spriggs claims he wanted addressed, actually occurred (no promotion for Dion Dockens, no hiring relatives in Public Works, the car assignment is a non-issue because no wrongdoing was known but the report there was based merely on a "feeling" the car *might* be misused). The employee must prove a causal connection between the adverse employment action and the reporting of wrongdoing and the alleged retaliation. *Id*. Showing the causal connection is clearly the burden of a plaintiff.

*Id*. Vague and inconclusive circumstantial evidence is not sufficient to show a causal connection and to shift the burden to the employer. *Id.*

The initial burden is on the Plaintiff to show a prima facie case that the employer terminated the employee based on a good faith report of waste or wronging. Here, Plaintiff admits that a report of waste was never made. He only alleges one report of wrongdoing. In this case, the analysis could end here. Spriggs cannot meet the initial burden in that the facts prove he did not complain about waste at all. As to wrongdoing, his report to Grover achieved the exact goals intended. The City did exactly what Spriggs wanted. The alleged goal of the reporting was fully achieved. Lastly, as to the report to Grover - the same did not have an impact on Spriggs' later (after the fact of the reporting) and purely voluntary actions to put forward the Griffin pay raise a second time or for him to consistently and incrementally anger the union. He was not terminated based on his report to Solicitor Grover. This is an especially important point. Spriggs did not submit the second Griffin raise request, nor was he involved in the shouting match with the union until months after he reported his alleged concerns about the Mayor's actions to Grover. In fact, the reporting worked, again Dockens was not promoted, the relatives were not hired in Public Works and the car assignment was a non-issue based on the record since it was based purely on a feeling that there might be misuse. Hartman decided to terminate Spriggs based on Spriggs' voluntary conduct alone. The conduct that

Spriggs engaged in months after the reporting of which he was fully and solely in control.  In this case, Spriggs has not and cannot meet this prima facie burden because of the admission that he submitted the second raise request, and he unapologetically admits the negative relationship he had with the union.  Case law provides that proximity and even evidence of employer antagonism is not enough to prove causation between a report and an adverse employment action.  Causation is key.  *McAndrew v. Bucks County Bd. of Comm*'rs, 982 F. Supp. 2d 491 (E.D. Pa. 2013).

However, even assuming Plaintiff has met the initial burden, the burden then shifts to the employer to show that there were legitimate reasons for the termination. Once such evidence is provided by the employer, the burden shifts back to the employee to prove that the reason was merely pretextual.  *Kimes v. University of Scranton*, 126 F. Supp. 3d 477 (M.D. Pa. 2015).[2]  When the burden is on the employer, it must prove by preponderance of the evidence that the termination was non-pretextual but only after the employee has put forward "concrete evidence" of a causal connection that the report led directly to his dismissal.  *Mosley v. City of Pittsburgh Public School Dist.*, 702 F. Supp. 2d 561 (W.D. Pa.).

Working through and assuming *arguendo* a situation where the City must show there was a legitimate reason(s) for terminating Spriggs, the standards for the

---

[2] All federal cases cited use Pennsylvania law.

employer are also plainly stated under case law.  The employer must show that there was a legitimate reason for the adverse action.  *Kimes v. University of Scranton*, 126 F. Supp. 3d 477 (M.D. Pa.)  Termination is non-pretextual under the Whistleblower law where the employer demonstrates that it would have taken the same action absent the employee's reporting of wrongdoing.  *O'Rourke v. Commonwealth*, 566 Pa. 161, 778 A.2d 1194  (Pa. Supreme Ct.) (not a federal case but helpful in analysis since the federal cases regularly use Pennsylvania Whistleblower law).  Even if the employer had actual animus toward the Plaintiff, if there was a valid separate reason for termination it must be sustained by the Court.  *Mosley.*

The facts in this case are like *Livingston ex. rel. Livingston v. Borough of McKees Rocks*, 223 Fed. Appx. 84 (3D Cir. 2007), wherein the municipality proffered separate, legitimate, and non-pretextual reasons for discharging a public employee, the termination was upheld, and an employee's First Amendment and Whistleblower claims failed.  In *Livingston* the employee was a police dispatcher. The employee was terminated.  The termination occurred when the municipal employer joined a county-wide dispatch system.  The court found that this was a non-pretextual reason for termination.  *Id.*  Other similar cases include *Johnson* and *Mosely*.  In *Johnson, supra*., the facts established that the employee reported that a co-employee had been impregnated by one of the consumers of a program for at-risk youth ages 16 to 21.  The report to the employer, a non-profit corporation, was not

18

sufficient to allege wrongdoing when the non-profit elected to do nothing with the report and the employee did not report again to any outside agency. *Id.* Another similar case is *Mosley, supra*. The facts in *Mosely* showed that an employee complained that the employee's supervisor's personnel file did not contain a criminal background check. The employee also felt he was being treated unfairly. The court found that neither fact constituted concrete evidence of causation or retaliation. The report was not made in good faith, the report was not on a significant legal violation, and the employee's termination after 5 months from the date of the report also demonstrated a lack of causality between the report and the adverse action.

Working backwards, the comparison to *Mosely* is obvious. Although Plaintiff does not clearly articulate it in his Second Amended Complaint, even if he "felt" he was a marked man after his report to Grover in April 2022, such a feeling would not be sufficient to prove pretext. *Johnson* went on to hold that the employee's feelings that she had been held up to unfair scrutiny or in a negative light were not enough to create a pretextual firing. Johnson's feelings did not constitute an "issue of material fact…" Merely being scrutinized or even being viewed in a harsh light cannot assuage Mr. Spriggs' actions. Sooner or later, he must own up to them. *Johnson* at 602-603. Lastly, *Livingston* applies here in that the reasons for termination, the second attempt to get Griffin a raise and the untenable relationship with the union,

19

both meet the standards set out in *Livingston*. They are separate, legitimate, and non-pretextual reasons for Spriggs' termination. Even assuming the first burden shifting is met, the City, by the law and undisputed facts above, proves that the burden must be again shifted to Plaintiff Spriggs. *Kimes v. University of Scranton*, 126 F. Supp. 3d 477 (M.D. Pa. 2015). Finally, as to *Kimes*, the case was decided in the employer's favor originally under a Motion for Summary Judgment. *Kimes* simply holds that only if an employee meets their prima facie burden does the burden shift to the employer to show no pretextual reason for termination.

Plaintiff alone caused his downfall. He alone elected to relentlessly pursue the Griffin pay raise even though he knew it had not been approved previously and he was never given any cause to believe from the Mayor or Dan Hartman (his supervisors) that the directive had ever been changed. Spriggs never asked either of them in advance if the directive had been lifted. In fact, he did not ask the Human Resources Director either. As to Marita Kelly, the Finance Director, he never talked with her directly, she did not know anything about the directive to start with, she was Spriggs' organizational equal and she could not tell him what to do at all, Spriggs only sent her emails to check on Griffin's position's budget status. Of course, Kelly would tell him that there was money in the budget to proceed, because there was. However, budget approval and raises do not equate and Spriggs knew or should have known that fact. Kelly did not have the duty, nor authority, to keep

20

Spriggs from "blowing himself up." Since she did not know about the directive, she could not have warned him off regardless.

Joni Willingham, Spriggs' organization subordinate (she was only a Bureau head versus cabinet level employee) also she had no duty or authority to warn Spriggs' off his reckless course of action. She did what she was supposed to do, and she reported to her superior Dan Hartman, to see if the Mayor had lifted the no-raise directive. Willingham had no duty to prevent a cabinet level employee from submitting the Payroll Action form. Her duty was to report to her supervisor and confirm whether the directive had been lifted. It had not been. She did her job.

Regardless of the Griffin raise attempt, Spriggs alone caused a one-man tempest with the union based on his management style (which he solely controlled as a cabinet level employee). He cannot blame that uproar on any of the City employees or even his overall scapegoat, the Mayor. Spriggs is solely responsible for his poor relations with the union. The Mayor was not involved in a shouting match with the union. If there is any non-pretextual reason for termination, it is a complete defense against a Whistleblower claim. 43 P.S. § 1424(c) and *Johnson*.

Where the City shows that there was a non-pretextual reason to terminate, such termination must be upheld. -This is true even if the City was proved to be "on the lookout" for Plaintiff to make a mistake. In fact, even if there was direct animus or active hatred of Plaintiff based on the Plaintiff's prior reporting about the

employer, the same would not be enough to defeat a legitimate reason for termination. The employer, in such a situation, has no liability to the employee. *O'Rourke v. Commonwealth*, 566 Pa. 161, 778 A. 2d 1194 (Pa. Supreme Ct.) (reconsideration denied), *Johnson* at 602-603. The City's Motion must be granted.

It must be noted that the Mayor could have easily fired Spriggs after the April 29, 2022, meeting he had with Grover.  The Mayor was confronted with the fact that either Grover was lying or Spriggs was lying about Spriggs' statement that the Mayor had told him to promote her son, regardless of any ethics issue.  However, he was not fired.  It was only after Spriggs himself had the second raise request form created by his employee Rosemary Nye and then he submitted the second Griffin raise request (while the Mayor was out of town) that he was fired. The flames Spriggs continued to fan with the union culminated on June 16, 2022, at a *Loudermill* hearing where a shouting match involving Spriggs and the union occurred. The Mayor was not present.  He was terminated on June 22, 2022.

So, even if everyone in the City actively disliked Spriggs, they were jealous of what he and his staff were paid, and they hoped each day for him to fail; the same would not be enough to save him under the Whistleblower law.  At the end of the day, he caused his own downfall by his own admitted and direct actions, over which he had full control over.

22

One of the most analogous cases compared to the undisputed facts here is *Lee v. Comhar, Inc*., 244 Fed. Appx. 464. (unreported). In *Lee*, an employee filed a sexual harassment complaint and a few days later he was terminated. He failed to show a causal connection. This was the case, especially where the employer had a legitimate cause to terminate him because the employee expressed negative opinions, stereotyped individuals with insults, and verbally threatened physical violence. In our case, Spriggs took it upon himself to move forward with a raise for Griffin when he knew or should have known it violated the directive of the Mayor. He was, at best, willfully ignorant in his actions to move forward under the second attempt at the raise. Likewise, he willfully engaged the union in a manner so egregious that it rose to the level of upper management. Spriggs was entirely responsible for his relationship with the union and the resulting fallout. If the court could find no causal connection in *Lee*, then the Court here should find no causal connection.

In that the employment action taken against him was neither retaliatory nor discriminatory, he cannot meet the requirements to be protected under the Whistleblower Law as set out in 43 P.S. § 1423.

"The Whistleblower Law is not designed to provide insurance against discharge or discipline for an employee who informs on every peccadillo of his

fellow employees." *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1070 (Pa. Cmwlth. 2013).

Here, seeking the second raise and inflaming the union, either or both, are clearly articulated and non-pretextual reasons for termination. The City has not wronged Plaintiff and Summary Judgment in its favor should be granted.

### 3.    SPRIGGS DOES NOT MEET THE DEFINITION OF A WHISTLEBLOWER

The Whistleblower law holds that an employee cannot be discriminated, discharged or retaliated against that "makes a good faith report or is about to report, verbally or orally or in writing, to the employer or appropriate authority an instance of wronging or waste by a public body …" 43 P.S. § 1423.

Waste is defined as action that results in "substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from the Commonwealth or political subdivision resources." Wrongdoing is defined as "a violation which is not of a merely technical or minimal nature of a federal State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422.  Lastly, to gain the protections of the law the report of waste or wrongdoing must be untainted by "malice or consideration of personal benefit." 43 P.S. § 1422.  The report must be in "good faith."  43 P.S. § 1423(a). The statutory definition of whistleblower is found in 43 P.S. § 1422.

Plaintiff makes only one claim against the City, which is that the City violated the Pennsylvania Whistleblower law by terminating him because he reported waste and wrongdoing. [ECF Doc. 38, Statement of Undisputed Material Facts., para. 159, in the filing see paras. 91 and 92].

Here, despite the Complaint and the numerous opportunities Plaintiff has had to amend the same to try and cobble together a viable claim, Plaintiff in his deposition, admitted that the alleged wrongdoing he reported to Grover was the attempt of the Mayor to get her son Dockens promoted, promoting the Mayor's family members, and hiring Williams' family members. [*Id.*, para, 245]. He also claims he told Solicitor Grover about his concerns as to the Mayor asking for a City car for a City employee, but Spriggs was only concerned about some possible misuse at some future point. He did not know of any misuse at the time he reported to Grover (it is also axiomatic that hundreds of assigned City cars are driven by hundreds of City employees each day). Spriggs admits that he never reported any of his concerns to anyone outside of Neil Grover prior to his termination on June 22, 2024. He had myriad opportunities to report, including when the State Ethics Commission physically came to the City to provide training. However, Spriggs never reported any of his alleged concerns to anyone outside the City prior to his termination. As to reporting his concerns to City officials, he only reported to Grover. He never reported to the Mayor or to Hartman, his supervisors. Even

assuming Spriggs could not comfortably report on the Mayor to the Mayor, Spriggs could have reported to Hartman, and he did not.

### A.    No Waste

First, his case cannot go forward under any theory of a report of waste because in Spriggs' deposition he could not think of a single instance of waste that he reported.  [Statement of Undisputed Material Facts, para. 244].

### B.    No Wrongdoing

Secondly, in that the Plaintiff cannot meet the definition of waste, this means that the Court must now determine if the report was: a) in good faith and done without malice or personal interest, b) there was wrongdoing of a non-technical nature which shows an actual violation of law, and c) an actual causal connection between the report and the wrongdoing.  If any one of the planks is not met, then the definition in the statute is not met and the Whistleblower law will not apply to the action by Spriggs.

There is only one report in question, and it is the report to Neil Grover, the Solicitor, in April 2022.  Although Plaintiff claims he had many concerns about the Mayor over many years, he only reported it once. He never reported it outside of the City, to anyone, prior to his termination.  As to the report of wrongdoing, Spriggs also fails to meet the definition required under the statute here, as stated  as well as under scrutiny.  It must be noted here that none of the matters reported by Spriggs

in April 2022 ever came to pass.  His report was accepted and none of the feared concerns ever actually occurred.  He was terminated for his own unrelated voluntary actions in June 2022.

C.    No Good Faith Report or Report Untainted By Personal Interest

Plaintiff does not demonstrate that he is a whistleblower under the definition provided in 43 P.S. § 1422.  The definition itself provides that the good faith report must be untainted by "consideration of personal benefit and which the person making the report has reasonable cause to believe is true."

In this case, there is only one report.  The report had either three or four subjects: Dockens promotion, promotion and hiring of the mayor's relatives, and the fear that a City car might be misused by a City employee at some time in the future. None of the feared events occurred.

First, the reported wrongdoing must be objective not subjective. The employees' beliefs are not relevant. The employee must prove that the matter reported was an actual violation of law, regulation, ordinance or code and not merely a technical or minimal violation.  Beliefs do not constitute claims.  *Kimes v. U. of Scranton*, 126 F. Supp. 3d. 477 (M.D. Pa. 2015).  Here, the events feared and reported on never occurred. Spriggs' mere belief that the car assigned might be misused is not sufficient to constitute a report of wrongdoing.  As to the hiring and promotion of relatives in Public Works, the City prevented the occurrence of the

matters.  The report worked.  Plaintiff was only terminated two months later because he acted relentlessly in violation of a directive to try and get a pay raise for Griffin and because he could not manage to have a good, functional relationship with the union, to the point it came to the attention of management.

A case which is almost directly on point is *McAndrew v. Bucks County Board of Comms.,* 183 F. Supp. 3d 713 (E.D. Pa. 2016).  In *McAndrew* a former deputy complained to sheriff's department officials about a laundry list of potentially criminal and regulatory violations.  The deputy reported that there were firearms safety violations, guards sleeping on the job, vehicle malfunctions, a failure of having proper safety policies, and corruption (a potentially criminal offense) in the department.  Regardless of the content of the report, the court found that the content did not meet the standards of a report of wrongdoing because the "complaints" did not specify what statute, regulation, ordinance or code of conduct was violated by the sheriff's department itself.  Here, a vague reference to the State Ethics Act, which is at most what was reported, and giving Spriggs all benefit of the doubt as required, would not meet the standard set out in *McAndrew*.  Again, the City did not wrong Spriggs even if his issues with the Mayor are true.  If anything, the City performed the very function it was supposed to perform. The feared events of alleged wrongdoing never occurred thanks to the City.

In *Hays v. Beverly Ent. Inc.*, 766 F. Supp. 350 (W.D. Pa. 1991) (affirmed 952 F. 2d 1992), a licensed nurse reported to her supervisor medical conditions and treatment of boarding care facility residents about which the nurse was concerned. She felt that the treatment and conditions were not appropriate. The facility had no duty to prescribe particular treatments for particular patients under the report of the nurse. As such, there was no wrongdoing under the statute. *Id.* These cases, *McAndrew* and *Hays*, show that Spriggs' report was not a good faith report of wrongdoing because what he was reporting on was not wrongdoing for purposes of the statute he is relying on. The content of the report matters and what the City did or did not do with the report matters. Here, the content does not qualify as a good faith report and the City did what was necessary in its reaction to the report. Nothing untoward ever actually happened. Lastly, nothing to do with the report was connected to the termination two months later.

The most direct example of a personal interest in a report is one where the employee is, in actuality, only interested in some benefit for herself, such as a financial benefit. *Frazier v. City of Phila.*, 2020 WL 897698 (E.D. Pa. 2020) (reports about overtime practices were to attain benefit for reporting employee). Spriggs' actions are more subtle. Spriggs' report, to be qualified, cannot be self-serving, yet his report was of his own self-interest. Based on his testimony, Spriggs relayed that he decided to report after going along with the Mayor for a long time because he did

not want to go to Jail.  [Statement of Undisputed Material Facts, para. 187].  He felt the Mayor was doing wrong and he was no longer willing to participate.  [*Id.*, para. 189].  He did not complain about the City.  [*Id.*, at para. 187].  His admitted acts are like those described in *Lape v. Penn.*, 157 Fed. Appx. 491 (C.A. 3 Pa. 2005).  In *Lape,* a terminated employee claimed she was fired when she sent a letter to a community corrections center that included content as to offender types and solutions to deal with certain offender types. She issued the letter after she had married a former inmate. The court found the actual report had nothing to do with her termination and the report itself did not report instances of wrongdoing.  *Id.* Here, Spriggs' prior "go along get along" attitude to things he now feels were wrong, his failure to ever report anything to anyone over the years until April 2022 and then only to Grover, what he reported on (events or fears that never came to fruition), the fact he was terminated for non-pretextual reasons unconnected to the actual things he was reporting about, and the fact the City never wronged him and that his reports were not even about the City; all lean toward a situation like *Lape,* summary judgment should be granted to the City.  Further, his report was made so he would not go to jail as he feared. Such motivation is self-interest. Lastly, the report itself dealt only with things Spriggs was afraid of or afraid would happen.  None of the things he feared ever happened.

In showing a lack of good faith, the facts here are more similar to matters where personal interest is less clear at the outset (unlike clear financial gain). The facts are more like *Moseley*, *supra*. where a school district employee was terminated after he reported that his supervisor's file was missing a criminal background check. His actual concern was that he was not being treated fairly when he believed a significant violation of state law was occurring. He was terminated five months after the report. The court found that the report was not made in "good faith" under the required standards. It also showed no causal connection to the adverse action and the report.

D.    <u>No Wronging Of The City Occurred, Plaintiff Got What He Wanted, Violations Merely Technical</u>

The situation here under the admitted facts is akin to prospective violations of law not actual violations. As noted above, none of the feared events ever occurred (no promotions, no hiring in Public Works, no car misuse). These fears are like the actions described in *Anderson v. Millcreek Twp. School Dist.*, 574 Fed. Appx. 169, (C.A. 3 Pa. 2014). Anderson was a school board employee. The employee feared that the school superintendent **might** engage in certain future conduct. The report only dealt with the conduct that might occur. The employee failed to convey that the superintendent violated any law, ordinance, regulation or code of conduct.

Plaintiff must prove that the wrongdoing is objective, not subjective and that it must be more than a mere technical violation. *Kimes v. University of Scranton*,

126 F. Supp. 3d 477 (M.D. Pa.).  Under *Kimes* the reporting party/plaintiff claimed that a police report had been altered. The employee claimed that the University retaliated against him for reporting the alteration.  The court determined that this was a good example of a technical or minor violation, even if the alteration were proven, it did not constitute wrongdoing under the definitions in the statute, especially in that wronging must be substantial and violate some specific law or code.  *Kimes,* supra. Like the claimants in *Anderson* and *Kimes,* Spriggs' complaint dealt only with violations he feared would occur and some, if not all, the allegations were minor or groundless.  Even the spiciest allegation that the Mayor wanted Spriggs to promote Dockens never came to fruition.  After the Solicitor gave the Mayor his official advice on May 2, 2022, (and on April 29, 2022) , all such efforts ceased, even according to Spriggs.  [Statement of Undisputed Material Facts paras. 193, 194, 195].  The Whistleblower law does not demand perfection in public officials, rather it requires actual violations of law - none of which are shown by the report. The system worked. The report was made, advice was given, the feared conduct was never consummated.  Nothing violating the law occurred.

Even assuming every word that Plaintiff alleges is true,  it is clear that the City "did right" by Spriggs. The City prevented the prospective wrongdoing from occurring through its Solicitor, which even Spriggs admits (assuming there was ever any wrongdoing at all).  As such,  the City did not violate the law nor Spriggs' rights.

Lastly, Plaintiff must show a causal connection between his termination and his alleged reporting.

### E.    No Causal Connection

As established above, the Plaintiff must prove by a preponderance of the evidence under § 1424(b), that there is a connection between his discharge and the report for him to gain the protections of § 1423.  In order to make out a case for retaliation he must show: 1) wrongdoing and 2) a causal connection between the report of wrongdoing and adverse employment action.  *McAndrews*, *supra*.  There was no causal connection between the April 2022 reporting and the termination in June. The City relies upon the facts and law cited in the section of this Brief about non-pretextual termination.  However, it also notes *Ambrose v. Township of Robinson*, 303 F. 3d. 488 (Pa. 2002), where the court found that even though a police officer had filed a report on the township officials ignoring an on-going illegal gambling issue, there was still no evidence that the report (in the form of an affidavit) was ever presented to the township officials that voted to suspend the officer in question.  As such, there was no provable causal connection.  There simply must be some evidence of a connection between the report and the adverse action.  *Kimes,* supra.  Also, in *Bennett v. Republic Service, Inc*. 179 F. Supp. 3d 451 (E.D. Pa., 2016), a dispatch worker at a solid waste disposal facility determined and reported that one of her managers marked a truck driver's timecard as being earlier than when

the driver actually arrived.  Seven weeks later, after reporting the matter, she was terminated.  The court determined that these facts did not warrant Whistleblower protection because the employee failed to connect the report with her termination. The fact that an adverse action is in close temporal proximity to a report does not save an employee from their duty to make the causal connection.

Lastly, it should be noted that Spriggs alleges he had dozens of concerns about matters the Mayor asked him about or tasks she wanted him to perform over the years. Spriggs' hands are by no means clean if any of the matters he alleges are accurate.[3] He did not stand by any of his alleged convictions. In fact, he kept those additional concerns to himself.  His own contention is that he only reported once to Neil Grover on an extremely limited number of subjects. None of the subjects ever actually came to fruition (no promotions, no hiring, the car cannot be shown at the time of the report to have been misused in any way).  This scenario is like *Connor v. Clinton County Prison*, 963 F. Supp. 442 (M.D. PA. 1997).  In that case a prison guard kept a private log of alleged issues involving the warden there. A private log is not a report for purposes of the Whistleblower statute.  As such, the numerous "concerns" about the Mayor that Spriggs testified to in his deposition, but never told anyone about prior to termination, cannot be considered as part of any report since they are like the private log in *Connor*.

---

[3] Spriggs' Complaint is hypocritical.  His own wife sought employment with the City while he worked there.

Plaintiff is no Whistleblower under the law, and he is not entitled to the law's protections.

### 4.    THE CITY ENJOYS IMMUNITY

The Commonwealth's Whistleblower law does not abrogate local government immunity applicable to the City, as the Whistleblower law does not in fact expressly waive the official municipal immunity afforded to local governments under the Political Subdivision Tort Claims Act (PTSCA). 42 Pa. C.S. §§ 8541-8542. In Pennsylvania, municipal immunity is intentionally broad and only limited by extremely specific enumerated exemptions.  The exemptions must be construed strictly. *Lindstrom v. City of Corry*, 563 Pa. 579, 584 (2000).  The exceptions are as follows: vehicle liability, care custody or control of personal property, real property, trees, traffic controls and street lighting, utility service facilities, streets, sidewalks, care custody and control of animals, and sexual abuse. In Pennsylvania, provisions of statutes possibly waiving immunity are to be considered under the general immunity.  So, for the immunity to be waived, it must be waived by statute under one of the listed activities noted above, such as street lighting.  Statutes do not *per se* waive immunity.  Waiver must be specific as a general rule.  42 Pa. C.S. § 8542(a)(b).  Even intentional torts do not waive immunity.  *Walker-Ellois v. Del Valley Charter High School*, 2007 Phl. Ct. Com. Pl. LEXIS 28 (Pa. C,PL; Phila 2007).

The statute itself, 43 P.S. § 1421 through 1428, never mentions that the immunity of the PTSCA is waived. If the legislature had wanted to waive the immunity as to local governments themselves, it very easily could have done so, and it did not do so on the face of the statute. Case law indicates that some immunities still apply even in the face of statutes. See *Meyer v. Cmty. College of Beaver County*, 606 Pa. 539, 546 (2010). Likewise, Pennsylvania law provides that the legislature must be assumed to know what it intends when it writes and passes a statute. In fact, a court cannot look beyond the words of an unambiguous statute. 1 Pa. C.S. § 1921.

The leading case on the subject is *Dougherty v. Sch. Dist. of Phila.*, 2012 U.S. Dist. LEXIS 177235 (W.D. Pa.). Dougherty claimed that he was terminated from the School District because he reported to the FBI, the Inspector General of the U.S. Dept. of Education and the *Philadelphia Inquirer* about wrongdoing. He felt that contracts were awarded on the basis of favoritism, personal connections and race. The court granted the District's Motion to Dismiss in part because the PSTCA must be narrowly construed as to its waivers and none of the eight exceptions to immunity were present in Dougherty's allegations. Dougherty argued in response that his action was one of willful misconduct by the District in the form of retaliation. The court did not agree. Further, the court noted that the Pennsylvania Constitution requires that the General Assembly, if it wishes to waive immunity, must do so specifically. See, Pa. Const. Art. I, § 11 and 1 Pa. C. S. § 2310. Waivers should not

be inferred because the waiver must be strictly construed. In that the Whistleblower law did not waive the immunity specifically, it was simply not waived and could not be waived by inference. As such, the claims against the school district were dismissed and as to the City here, the claims relating to the City should be subject to Summary Judgment. The City is immune from liability under the PSTCA.

## VII.   <u>CONCLUSION</u>

There are no material issues of fact. Mr. Spriggs knew or should have known, as a Department Director, that merely because money was budgeted for a raise that a raise was not *per se* granted. He knew or should have known, that the Mayor had never lifted her prohibition on the raise requested for Austin Griffin, which was, in fact, turned down in April 2022 before the June 2022 second attempt by Spriggs to move it through. Spriggs knew or should have known, that a fellow and equal Department Director, Marita Kelly, could not "approve" a raise for Austin Griffin. When the Business Administrator, Dan Hartman, learned what Spriggs was trying to do, he was properly upset. Hartman recommended termination to the Mayor. Even if the attempt to improperly get the raise was not a non-pretextual reason to terminate Spriggs, he also regularly incensed the union with his inflammatory management style. The AFSCME complained about Spriggs to the point that it finally rose to the attention of Dan Hartman and the Solicitor. Public Works employees were quitting because of Spriggs' behavior. This alone is reason enough

for termination, and if there is any non-pretextual reason to terminate, Spriggs does not enjoy the protections of the Whistleblower law. The City had clearly articulable reasons to terminate that are not pretextual. If even one of the reasons is valid the termination must be upheld and there is no Whistleblower violation. The City's Motion for Summary Judgment should be granted under 43 P.S. § 1423(c), which affords the City a full and complete defense.

Further, Spriggs cannot meet the definition of a Whistleblower. He admits he did not report on waste. As to a report on wrongdoing, he never reported on the wrongdoing of the City. He reported on the alleged wrongdoing of the Mayor as to the Mayor's alleged attempt to get her son promoted. Spriggs reported to the City Solicitor (in this case the Solicitor being the City). Spriggs never reported to any outside agency after having multiple chances to do so. Due to the efforts of the City Solicitor, and the Solicitor's insistence (assuming as one must for the sake of this argument that what Plaintiff is propounding is true) that her son could not be promoted – her son was never promoted. The City did exactly what the City was supposed to have done even under Spriggs' version of events. The City must be dismissed because neither waste nor wrongdoing of the City was reported. Spriggs acts do not meet the statutory definition. 43 P.S. § 1422.

Lastly, the statute itself does not waive municipal immunity. The case law under *Dougherty v. Sch. Dist. Of Phila., supra*, provides that a waiver of municipal

liability has not occurred at the time of the filing of this Motion and Brief. Until there is a definitive decision of waiver from the Pennsylvania Supreme Court or until the statute is amended to clearly waive municipal immunity, this Court should rule in favor of upholding the municipal immunity.

Sadly, there is a victim in this case. His name is Dion Dockens. He will never be promoted while his mother is Mayor. Even though the Plaintiff's predecessor wanted to promote Dockens, and the current Department Director wants to promote him. Even though the upper leadership of the Public Works Department has for years been led by self-made men who, very literally, have worked their way up from being trash collectors to the top echelons of the City, Dockens will never be promoted under an City Administration headed by his mother, not because of an objective judgment of his skills and abilities, but merely because under Pennsylvania law, his parentage matters. Few things are less American than that.

Date:  January 7, 2024

Respectfully submitted,

Lavery Law

*/s/ Murray J. Weed*
Murray J. Weed, Esquire
Pennsylvania Bar No. 32917
Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
225 Market Street, Suite 304
Harrisburg, PA 17110

(717) 233-6633 (phone)
(717) 233-7003 (fax)
mweed@laverylaw.com
flavery@laverylaw.com
*Attorneys for Moving*
*Defendant*

## **CERTIFICATE OF SERVICE**

I, Michelle Principato, an employee with the law firm of Lavery Law, do hereby certify that on this 7th day of January, 2025, I served a true and correct copy of the foregoing Brief in Support of Motion for Summary Judgment on all counsel of record via the Court's ECF system.

Marc E. Weinstein, Esq.
500 Office Center Drive
Suite 400
Fort Washington, PA 19034
marc@mwweinsteinlaw.com

David J. MacMain, Esq.
MacMain Law
433 W. Market Street
Suite 200
West Chester,  PA. 19382
dmacmain@macmainlaw.com

*/s/ Michelle Principato*
Michelle Principato,
Legal Assistant